IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 10, 2002

## RANDALL EUGENE BEST v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Monroe County**
**No. 01-170     Carroll L. Ross, Judge**

**No. E2002-00668-CCA-R3-PC**
**April 30, 2003**

The petitioner, Randall Eugene Best, appeals the trial court's denial of his petition for post-conviction relief.  In this appeal, he asserts that he was denied the effective assistance of counsel at trial and on appeal.  The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined.  JAMES CURWOOD WITT, JR., J., not participating.

Steve McEwen, Mountain City, Tennessee (on appeal), and William Donaldson, Assistant District Public Defender (at trial), for the appellant, Randall Eugene Best.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Richard Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner was indicted for especially aggravated burglary, premeditated murder, and felony murder in connection with the beating death of the eighty-seven-year-old victim, Ben Ray.  At trial, the state offered proof showed that the petitioner entered the victim's residence through a window and beat the victim with a hard linear object, possibly a tire tool.  The medical examiner testified that there was evidence of thirty to forty blows.  The victim remained conscious and was able to telephone his daughter and son-in-law, who summoned help.  The victim ultimately died from his injuries.  The petitioner, who rented a house from the victim, maintained that on the day of the murder, he drove his ex-wife, Brenda Best, with whom he still resided, to the victim's residence so that she could clean it.  He contended that when he returned two hours later, he used a tire tool from his car to "sneak inside" a window because he suspected that Ms. Best was having an affair with the victim.  The petitioner claimed that when he discovered Ms. Best naked and in bed with the victim, he "went crazy" and struck the victim six to eight times.  He was convicted of especially aggravated robbery, premeditated murder, and felony murder.  The latter two convictions

appear to have been merged by the trial court. The jury fixed punishment at life without parole.[1] On direct appeal, the petitioner argued that the evidence was insufficient, that photographs of the victim should have been excluded, and that application of the felony murder aggravating circumstance was unconstitutional. This court affirmed the convictions. See State v. Randall E. Best, No. E1999-00120-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Sept. 26, 2000), perm app. denied (Tenn. 2001).

On June 15, 2001, the petitioner filed this petition for post-conviction relief, alleging that his murder conviction was based on the use of a coerced confession and violative of double jeopardy provisions. He also contended that he was denied the ineffective assistance of counsel and that newly discovered evidence required a new trial.

At the hearing, the petitioner testified that he was initially represented by Attorneys Jim Stutts and John Cleveland, but was ultimately represented at trial by Attorneys William Tallman and Kimberly Parton. He maintained that prior to trial, they informed him that they had found a medical examiner who would "testify that [the victim] hadn't been hit . . . more than 10 times at the most." The medical examiner, however, was not called as a witness. The petitioner also claimed that he had asked his counsel to interview the victim's other tenants to determine whether the victim had engaged in additional affairs, but that they had advised him that such evidence would be irrelevant. He contended that his first lawyers had filed an unsuccessful motion to recuse the trial judge and that he had asked Attorneys Tallman and Parton to present the issue a second time. The petitioner asserted that the failure to appeal the denial of the motion to recuse, either by interlocutory or direct appeal, constituted ineffective assistance of counsel.

The petitioner also maintained that his trial counsel was ineffective for failing to argue that the delay between his arrest and his appearance before a magistrate was a basis for relief. He complained that he was in custody for ten to twenty days before he appeared before the magistrate and that, in consequence, he had made incriminating statements to the police without the benefit of counsel. The petitioner recalled that he initially lied to Detective Patrick Upton, claiming that he had been out with some friends and had gotten into a fight. He contended that he gave a second pre-trial statement to Tennessee Bureau of Investigation Agent T.J. Jordan only because a jailer offered him a contact visit[2] with Ms. Best. He claimed that he was under the influence of alcohol and drugs, namely phenobarbital, at the time of both statements. The petitioner alleged that his initial lawyers were ineffective for failing to communicate with Middle Tennessee Mental Health Institute while he was there for evaluation. He testified that his doctor at MTMHI told him that she would testify on his behalf, if necessary, but that she "couldn't properly evaluate [him] without talking to [his attorneys]." It was his opinion that had his attorneys communicated with his doctor, the results of the mental evaluation would have been different and he would have had a possible insanity defense.

---

[1] The petitioner did not appeal his especially aggravated burglary conviction on direct appeal and does not list it on his petition for post-conviction relief. The sentence is not in the record on appeal.

[2] The petitioner testified that a contact visit was not the equivalent of a conjugal visit; rather a contact visit was one in which the parties were allowed to speak face-to-face, without a barrier between them.

Finally, the petitioner claimed that he was denied a fair trial because he could not have had an impartial jury in Monroe County.

During cross-examination, the petitioner was confronted with court records establishing that he had been arraigned five days after his arrest for especially aggravated burglary and three days after his arrest for attempted first degree murder. He did not deny their accuracy. The petitioner acknowledged that he met with defense counsel twenty or thirty times prior to trial for "sometimes an hour, sometimes two hours." He also acknowledged that prior to trial, he had tentatively agreed to plead guilty with a sentence of life with the possibility of parole on the condition that he be allowed to apologize to the victim's family. He conceded that he later changed his mind.

Attorney William Tallman, who represented the petitioner as lead counsel at trial, acknowledged that prior to trial, Dr. Steve Dunton, the medical examiner for Fulton County, Georgia, reviewed the autopsy results and concluded that the victim had been struck fewer than twenty or thirty times. Attorney Tallman explained, however, that he and his co-counsel decided against calling Dr. Dunton as a witness because the doctor characterized the victim's death as involving "a lot of pain and suffering." While aware that the petitioner had earlier sought the trial judge's recusal, Attorney Tallman testified that after he undertook representation, the trial judge never exhibited any bias or prejudice. It was his opinion that any evidence of other liasons between the victim and his tenants would have been irrelevant. In his view, it would not have benefitted the defense to "go out and slander" the character of "an 87-year-old man . . . beaten to death in a gory, gruesome beating."

According to Attorney Tallman, there was no potential issue regarding the length of time between the petitioner's arrest and his being taken before a magistrate. He did recall unsuccessfully attempting to gain suppression of the petitioner's pre-trial statements. In consulting with Dr. Dunton, Attorney Tallman learned that any alcohol or phenobarbital consumed by the petitioner would have been out of his system by the time the statements were given. He testified that he did not represent the petitioner at the time of his evaluation at Middle Tennessee Mental Health Center. By his assessment, they were able to impanel a fair jury in Monroe County. Attorney Tallman recalled that they were allowed the use of jury questionnaires and individual voir dire and that they "took quite awhile in picking a jury." He also testified that the petitioner had provided him with inconsistent statements:

> [The petitioner] kind of vacillated on his story with us a few times. He had told us initially . . . that he went [to the victim's residence] and thought Brenda [Best] was there and then – he didn't . . . tell us that he had actually [gone] in and caught them involved in some sex act until a short period before the trial, maybe a month or two before the trial. His story was just kind of back and forth as to what he went there for.

Attorney Tallman stated that while the petitioner may have been attempting to protect Ms. Best, the best possible defense was "to reposition [their] thinking to go with trying to argue that it was a heat

of passion killing and try to get it down to either manslaughter or second degree murder." He revealed that he was unable to develop any supportive proof that Ms. Best had been at the victim's residence at the time of the offenses and that "the big problem [they] had [was] . . . [the victim's] blood all over [the petitioner.]"

Kimberly Parton, who acted as Attorney Tallman's co-counsel, testified that the petitioner did not inform them that he had taken phenobarbital prior to his statements to police until the empty prescription bottle was discovered on Brenda Best's property inventory. Ms. Parton, who also represented the petitioner on the appeal of the convictions, recalled that she communicated with the petitioner by telephone and mail. She stated that they "basically raised the issues that were . . . [in] the amended motion for new trial." Although she did not recall whether the petitioner asked to appeal the denial of recusal, Ms. Parton did testify that it "would have been a frivolous issue and . . . would have taken away from any legitimate issue."

At the conclusion of the hearing, the post-conviction court denied relief. In this appeal, the petitioner argues that his trial counsel was ineffective for (1) failing to move to suppress his statements to law enforcement officers; (2) failing to appeal the trial judge's denial of his motion to recuse; (3) failing to seek a change of venue; and (4) failing to arrange for the testimony of a medical expert to rebut the state's proof that the victim was struck thirty to forty times.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Initially, the petitioner complains that trial counsel was ineffective for failing to seek suppression of his pre-trial statements. He argues that his statements to police were not voluntary and knowing because he was under the influence of alcohol and drugs at the time they were made and because there was an unnecessary delay between his arrest and his appearance before a magistrate. The petitioner also contends that his second statement was the result of coercion by the state in the form of the promise of a "contact visit with Brenda Best." The post-conviction court ruled as follows:

From the proof, it appears that [the petitioner] was taken before a magistrate in a prompt and timely manner, after arrest. This ground is denied.

The court finds no coercion, undue pressure or deceit in the obtaining of [the petitioner's] statements. This ground was extensively addressed prior to the trial of the case. The ground is denied.

In our view, the evidence does not preponderate against those findings. The petitioner was taken before the magistrate in a timely manner. Further, the record reflects that trial counsel did, in fact, move for the suppression of the petitioner's statements to law enforcement officers. The post-conviction court observed that the issue was "extensively addressed prior to . . . trial."

Moreover, any deficiencies of trial counsel would not have resulted in prejudice to the petitioner. A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made "voluntarily, knowingly, and intelligently." Miranda v. Arizona, 384 U.S. 436, 479 (1966); State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992). There is no evidence in the record that the petitioner's statements to law enforcement officers were the products of drugs or alcohol. Dr. Dunton, the medical examiner consulted by defense counsel, concluded that any drugs or alcohol consumed by the petitioner prior to his arrest would not have remained in his system at the time of the statements. Although the petitioner claims to have received drugs from another

inmate in the interim, there was no testimony at the evidentiary hearing about the particular drugs or their effects. Similarly, there was no evidence presented that any delay in the petitioner's appearance before a magistrate rendered the statements involuntary. Finally, the petitioner cites no authority for the proposition that his second statement was involuntary because it was based on the promise of a visit with his ex-wife, which he received. Although a statement may be rendered inadmissible by such a promise combined with other coercive tactics, see United States v. Fay, 323 F.2d 65 (2d Cir. 1963) (holding that confession after prolonged interrogation and promised visit from wife and chaplain was inadmissible), the trial court rejected that assertion. In our view, the evidence does not preponderate against that conclusion.

Next, the petitioner asserts that counsel was ineffective for failing to appeal the trial judge's denial of his motion to recuse. In its order, the post-conviction court found that counsel's performance was not defective and that the petitioner had failed to prove prejudice:

> The court finds no error in counsel's actions regarding this court hearing this case. The relationship between the court and the decedent's son, Jim Ray, was of a professional nature when Mr. Jim Ray was a police officer and the judge was a member of the District Attorney General's Office. Such relationship was some fifteen years ago, and was fully explored by counsel. Additionally, there was no prejudice to [the petitioner] in any way. This ground is denied.

The record suggests that the motion to recuse was based, at least in part, on a previous work relationship between the trial court and the victim's son. Prior to the post-conviction hearing, counsel for the petitioner stated that the trial judge, who was also the post-conviction judge in this case, "knew the son of the victim" and worked with him at the district attorney's office before taking the bench. At that point, the judge stated as follows:

> [F]or the record, we did have a motion, a hearing on this, and I think I stated at the time I had known – [the victim's son] worked – I think for Madisonville, and I'm saying "I think" because I don't specifically recall, either the sheriff's department or Madisonville, but I guess it was the police department in Madisonville. And . . . I prosecuted here from '82 to early 1986, and I don't know that I had seen [the victim's son] until this incident occurred in that interim, unless we had casually seen each other on the street or something. And you used the word "socialize", and we certainly have never socialized. I don't know that I've ever been anywhere that [the victim's son] has been except in a courtroom or a jail situation when we were both there on a professional basis. And again, that would have been years and years ago, and I had had no contact with him. I knew no other member of his family; had never seen any of them until we got to trial . . . .

Later, at the close of the hearing, the post-conviction judge ruled as follows:

I did not feel and I do not feel today that in any way I should have recused myself. I don't feel that any contact I had with [the victim's son] was such that would [a]ffect my ability to make a decision. . . . And . . . as counsel said, they had other issues they raised on appeal, and they did not feel that was a legitimate issue to raise. . . .

In our view, the record does not preponderate against the post-conviction court's findings that the petitioner proved neither deficiency in his counsel's performance nor prejudice in the result. Although the petitioner argues that the issue should have been raised on an interlocutory appeal, he presents no proof that the appeal would have been granted or that it would have been successful. Ms. Parton testified that she did not raise the issue on direct appeal because she considered it to have no merit and did not want to detract from other issues that could possibly give rise to relief. This was a reasonable strategy made after adequate consideration that will not be second-guessed by this court. See Adkins, 911 S.W.2d at 347. "The general rule is that a trial judge should recuse himself whenever his impartiality can reasonably be in question." State v. Cash, 867 S.W.2d 741, 749 (Tenn. Crim. App. 1993). A trial judge's denial of a motion to recuse will be upheld absent a showing of abuse of discretion. Id. That Attorney Tallman testified that the trial judge did not exhibit any bias during the course of the trial and that "Judge Ross gave [them] as fair a trial as [he had] had in any court anywhere," sufficiently supports the findings of the post-conviction court.

The petitioner next argues that counsel's failure to seek a change of venue constituted the ineffective assistance of counsel. He asserts that a change of venue was necessary due to pretrial publicity, the severity of the offense, and the fact that Monroe County "is a relatively small county in terms of population." The state responds that the petitioner has failed to show either ineffectiveness or prejudice.

"[V]enue may be changed . . . if it appears to the court that, due to undue excitement against the defendant in the county where the offense was committed or any other cause, a fair trial probably could not be had." Tenn. R. Crim. P. 21(a). Whether to grant or deny a motion for change of venue is a matter of judicial discretion. Rippy v. State, 550 S.W.2d 636, 638 (Tenn. 1977). The appellate court will not interfere with the exercise of discretion absent clear abuse. State v. Melson, 638 S.W.2d 342, 360 (Tenn. 1982). The ultimate test is whether the jurors who actually sat and rendered verdicts were prejudiced by the pretrial publicity. State v. Garland, 617 S.W.2d 176, 187 (Tenn. Crim. App. 1981). The burden of proof is on the defendant. See Adams v. State, 563 S.W.2d 804 (Tenn. Crim. App. 1978). Prejudice will not be presumed on the mere showing that there was considerable pretrial publicity. Dobbert v. Florida, 432 U.S. 282, 303 (1977); State v. Kyger, 787 S.W.2d 13, 19 (Tenn. Crim. App. 1989).

Regarding this issue, the post-conviction court found as follows:

There was no basis to change venue. The jury pool was voir dired individually as to pre-trial publicity and previously formed opinions in this case. The results did not indicate any problem with undue publicity or any poisoning of the jury pool. This ground is denied.

In our view, the petitioner has failed to present specific evidence of any pretrial publicity or any prejudice to the verdict. Attorney Tallman testified that they used questionnaires and individual voir dire in selecting the jury and that the jury they impaneled was fair. Nothing in the record suggests otherwise.

Finally, the petitioner contends that trial counsel was ineffective for failing to call Dr. Dunton, the Fulton County, Georgia, medical examiner, as a witness. The post-conviction court found that the petitioner was not prejudiced by any failure to call the witness:

> [The petitioner] could not benefit from testimony that the victim might have been hit as few as 10 times, or even 4 to 6 to 8 times as [the petitioner] has testified today. The proof showed otherwise, [the petitioner] was covered in blood which was shown to be the victim's. The victim's blood was splattered and shed in two bedrooms of his home and a connecting hallway. [The petitioner's] statement that he hit the victim repeatedly with a tire tool matches the state's proof and the exact number of blows would not benefit [the petitioner]. Defense counsel consulted their own medical examiner in this case. This ground is denied.

Initially, because there is no evidence in the record to indicate what Dr. Dunton's trial testimony would have been, this issue has been waived. See Tenn. Ct. Crim. App. R. 10(b); see also Tenn. R. App. P. 27(a)(7); State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). The record nevertheless supports the trial court's conclusion that the petitioner would not likely have benefitted from the testimony. Attorney Tallman testified that defense counsel's decision not to call Dr. Dunton as a trial witness was based on the following:

> Well, we met with Dr. Dunton[,] . . . [b]ut in meeting with [him], the only thing he could say . . . that would possibly help us was that . . . the number of blows was less than what [Dr. Harlan, the state's medical examiner, testified to.]
>
>            \*       \*       \*
>
> I don't recall the number [of blows estimated by Dr. Dunton] being 10, but I'm not going to argue about that . . . because I just don't remember the exact number. The reason we didn't call Dr. Dunton was because, overall, we felt his testimony would not help [the petitioner]. We were concerned that Dr. Dunton would, would make a very good witness. The only problem would be he would be a very good witness for the [s]tate because when he talked with us – when he went through the records and everything on . . . [the victim's] death was that he mentioned a lot of pain and suffering and how agonizing a death it would be and the injuries and so on, and we certainly didn't want that to come in front of the jury.

That qualifies as a reasonable tactical decision. Further, as Attorney Tallman explained, issues unrelated to this trial had caused a breach in the relationship between Dr. Harlan and the prosecution, a breach that he believed could possibly inure to the benefit of the defense. Again, this was a

reasonable strategy based upon adequate investigation and preparation.  Thus, no relief is warranted on this ground.

Accordingly, the judgment of the post-conviction court is affirmed.


_____
GARY R. WADE, PRESIDING JUDGE